UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROY A. LUSSIER,

                    Plaintiff,                12-CV-0152(MAT)

          v.                                  **DECISION**
                                              **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                    Defendant.

---

## INTRODUCTION

Plaintiff Roy A. Lussier ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##11, 14.

## BACKGROUND

On August 16, 2007, Plaintiff filed applications for DIB and SSI alleging that he was disabled beginning August 14, 2007 due to

---

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

HIV, strokes, back pain, and Hepatitis C. T. 155-64, 189.[2] Those applications were denied on March 20, 2008, and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). T. 101-107. Plaintiff's hearing was conducted before ALJ Bruce R. Mazzarella on June 3, 2010. T, 31-98. Plaintiff, who was represented by counsel, testified that the primary problem interfering with his ability to work was related to his mental health. T. 42. Plaintiff's friend, Patricia Fountain, and an independent Vocational Expert ("VE") also testified at the hearing. T. 80-89, 89-98.  The ALJ issued a written decision on July 21, 2010, finding that Plaintiff was not disabled. T. 11-30.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the SSA, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found Plaintiff suffered from the following severe impairments: Post-Traumatic Stress Disorder ("PTSD")/anxiety, depression, personality disorder, HIV with some limitations based upon fatigue, and chronic back discomfort, and that those impairments did not meet or equal the Listings set forth at 20 CFR 404, Subpart P, Appendix 1. T. 16-18. Because Plaintiff could not be found disabled at the third step, the ALJ proceeded to determine

---

[2] Numerals preceded by "T." refer to pages from the transcript of the administrative record, submitted by Commissioner as a separately bound exhibit in this proceeding.

that Plaintiff retained the residual functional capacity ("RFC") to lift/carry 20 pounds occasionally and 10 pounds frequently; sit for an 8-hour workday with normal breaks and meal periods; and stand/or walk for an 8-hour workday with normal breaks and meal periods; and was limited to a low-contact, low-stress environment with no sun exposure. T. 18. The ALJ then found that Plaintiff could not perform his past relevant work as a case aide, telemarketer, laborer, and construction worker. T. 24-25. Relying on vocational expert testimony, the ALJ concluded that Plaintiff was not disabled as he was capable of making an adjustment to other work existing in significant numbers in the national economy.[3] T. 25.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 19, 2011. T. 1-5. Plaintiff then filed this action on February 19, 2012, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Dkt. #1.

In his motion, Plaintiff alleges that the decision of ALJ Mazzarella is erroneous and not supported by substantial evidence contained in the record, and seeks reversal of the ALJ's decision. In the alternative, Plaintiff requests the Court to remand the action to the Commissioner for further proceedings. Pl. Mem.

---

[3] For purposes of the Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

(Dkt. #11-1) at 15-25.  The Commissioner also moves for judgment on the pleadings on grounds that the ALJ's decision is correct and is supported by substantial evidence. Comm'r Mem. (Dkt. #15) at 22-30.

For the following reasons, the Commissioner's motion is granted, and Plaintiff's motion is denied.

### DISCUSSION

### I.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

II.  **Medical Evidence**

A.  **Treating Physicians**

The record contains extensive treatment notes from Plaintiff's primary care provider Dr. Fatai Gbadamosi from 2007 to 2010. Plaintiff was treated by Dr. Gbadamosi for a number of medical issues, primarily related to hypertension, HIV, back pain, and numbness/weakness in his left leg. Plaintiff's physical examinations yielded entirely normal results, with the exception of decreased range of motion in the left hip. T. 236-250, 295-323. 377-97, 400 Likewise, Plaintiff's viral load and CD4 numbers remained within normal ranges[4] throughout the relevant period despite occasional missed doses of his antiretroviral drugs. Id.

On October 30, 2008, Plaintiff first reported to Dr. Gbadamosi that he had anxiety, racing thoughts, and photophobia. Though he recently started taking Paxil and Valium, there was no improvement in Plaintiff's mood. Accordingly, Dr. Gbadamosi recommended that Plaintiff see a psychiatrist. T. 308-310.

In May, 2010, Dr. Gbadamosi completed a medical source statement, finding that Plaintiff's ability to understand, remember, and carry out instructions were not affected by his impairments, but that he had "marked limitations" in interacting

_____

[4] On this motion, Plaintiff does not contest the ALJ's finding that his conditions do not meet any of the listed impairments, particularly those pertaining to Plaintiff's HIV status. Pl. Mem. at 16.

appropriately with people/supervisors/co-workers and in responding appropriately to usual work situations or work changes. T. 374-75.

The record shows that Plaintiff sought mental health treatment at Spectrum Health Services from February to June, 2009. On March 30, Plaintiff was administered an initial psychiatric assessment, during which he complained of panic attacks, auditory hallucinations, and flashbacks. T. 404. He stated that Paxil, Wellbutrin, and Ambien afforded him little relief. Id. On examination, Plaintiff was observed to be alert, fully oriented, with depressed mood, aggressive affect, and clear thoughts. T. 405. On his termination form from Spectrum, the evaluator assessed Plaintiff's Global Assessment of Functioning ("GAF") score at 60,[5] and reported that Plaintiff had not achieved any goals and that it was likely his problems would return in the near future. T. 402.

From December, 2009 to May, 2010, Plaintiff saw Dr. Dham Gupta and associated therapists at the Niagara County Department of

---

[5] The GAF scale indicates the clinician's overall judgment of a person's level of psychological, social, and occupational functioning. The GAF scale ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, ("DSM") 32, 34 (4th ed., text revision, 2000). A GAF score in the range of 51-60 indicates moderate symptoms (flat affect and circumlocutory speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (few friends, conflicts with peers or co-workers). The Court notes that the Fifth Edition of the DSM has discarded the use of GAF Scores. See Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013). The DSM IV, however, was in effect at the time of Plaintiff's treatment.

Mental Health ("NCDMH") for anxiety and anger issues. T. 445. Upon admission, the therapist observed that Plaintiff was agitated and very hostile ("swears a lot") with symptoms of hallucination. Id. Those issues were not present at subsequent sessions dated January 14 and 25, 2010. T. 444. Plaintiff demonstrated anxious mood in February and May, 2010. T. 439, 441. He was noted to have poor attendance at treatment sessions, which inhibited his progress. T. 439. During a May, 2010 visit, the therapist recorded Plaintiff's GAF score as 55, and recommended outpatient treatment visits. T. 439-40.

### B.  Consultative Examinations

Plaintiff was consultatively examined by Thomas Ryan, Ph.D., on November 17, 2007. T. 252-55. He stated that he attended school until 8th grade and obtained a GED diploma later. T. 252. He related that he had psychiatric counseling in 2004 but none since that time and had no psychiatric hospitalizations. Id. Plaintiff's history included a hospitalization for a gunshot wound in 1983, HIV - positive diagnosis, drug and alcohol abuse, and a 14-year period of incarceration for the commission various felonies. T. 253. Dr. Ryan's assessment was largely unremarkable, however he noted that Plaintiff's mood was dysthymic with poor insight and judgment. T. 254. The doctor also observed that Plaintiff "may have difficulty dealing with stress." Id.

Plaintiff also underwent a consultative examination with Dr. Harbinder Toor, an internist, in November, 2007. T. 256-60. In addition to his history of HIV and Hepatitis C, Plaintiff related to the doctor a history of lower back pain for many years with a pain level of "10" on a scale of 1-10. T. 256. He also complained of anxiety, cough, fatigue, diarrhea, night sweats, insomnia, and flu-like problems. Id. Plaintiff reported that he did not cook, clean, or do laundry, did not socialize, or play sports. He told the doctor that he bathed and dressed daily, and watched television and movies for recreation. T. 257. Plaintiff's physical examination yielded normal results, with the exception limited range of motion in his lumbar spine. T. 258. An x-ray of Plaintiff's lumbosacral spine was normal. T. 259.

Dr. H. Findley, a State Agency medical consultant, reviewed the evidence in January, 2008, and opined that Plaintiff could perform at a light to medium RFC level. T. 262. In March, 2008, Dr. C. Butensky, a State Agency psychological consultant, reviewed the medical evidence and concluded that Plaintiff had a mild restriction in the following areas: activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; and reported no episodes of deterioration. T. 276.

III. **Non-Medical Evidence**

Plaintiff was 50 years-old at the time of his hearing, had completed a GED diploma and an Associate's degree, and previously worked as a telemarketer, counselor, laborer, and roofer. T. 37-41. He testified that he had to leave his job as roofer because the sun, combined with either his medication or HIV, caused lesions on his skin. T. 53-54.

Plaintiff lived alone in a house, but his close friend, Patricia, spent a good deal of time at his home. Patricia shopped and cleaned for him, and reminded him to take his medication. T. 56-59. According to Plaintiff, grocery shopping had given him panic attacks in the past. T. 58. Patricia also prepared Plaintiff's meals because he wasn't "really a good cook" and cleaned because he would not take care of the household chores otherwise. T. 56-57. Plaintiff testified that he was able to drive, go for walks, take care of his personal needs, and take care of his dog. T. 58. Patricia told the ALJ that she has to "keep track of" Plaintiff, and admitted that she had a romantic interest in him. T. 81.

Although Plaintiff complained of chronic back issues for most of his life, he testified that x-rays and MRIs had not shown anything wrong with his back. T. 48-49. He testified that strenuous activity, including mowing the lawn, exacerbated his back pain. T. 51.

Plaintiff stated that the biggest impediment to his ability to work, at the time of his hearing, was his mental health status, which included depression, PTSD, anxiety, and panic attacks as a result of being beaten and raped while in prison, and being shot during a drug transaction in 1993. T. 42, 44. He testified that he underwent therapy and medication, which helped his panic attacks, and that he had not had an episode for three or four weeks. T. 47-48, 67. Episodes could be triggered by large crowds, having to attend appointments, and loud noises. T. 58, 66-68.

The ALJ also posed four sets of hypothetical to the VE, Mr. James Phillips, regarding an individual of Plaintiff's age, work experience, and education. The first hypothetical involved an individual that could sit for 20-30 minutes at a time, stand for 20-30 minutes at a time, would not be able to alternate sitting or standing without reclining, walk up to four blocks, and lift up to 15 pounds. T. 93. The VE responded that the hypothetical individual could not perform Plaintiff's past work and could not perform work in the national economy. Id.

The second hypothetical involved an individual who could sit for an 8-hour workday with normal breaks and meals, could stand/walk for an 8-hour workday with normal breaks and meals, and lift/carry up to 20 pounds occasionally and 10 pounds frequently. The VE stated that the individual could perform Plaintiff's past

work as a counselor/case aide (light level) and telemarketer
(sedentary level).

The third hypothetical contained the same facts as the second,
except that the individual would also be limited to low-contact
work in a low-stress environment, without sun exposure. T. 94-95.
The VE responded that the individual could not perform Plaintiff's
past work, but could perform work as a line packer or
inspector/packer. T. 95.

The fourth hypothetical involved the same facts as the third,
except that the individual would have a marked limitation in
working with the general public, supervisors, and co-workers.
T. 96. The VE concluded that the individual could not perform any
of the aforementioned jobs. Id.

Plaintiff's counsel also posed a hypothetical to the VE with
the same facts as the third, except the individual would need to
take frequent, unscheduled breaks. T. 97. In response, the VE
stated that the individual would not be able to perform work in the
national economy.

## IV. __The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.__

### A.    Treating Source Evidence

Plaintiff first contends that the ALJ failed to accord proper
weight to Plaintiff's treating psychiatrist, Dr. Gupta.  Pl. Mem.
(Dkt. # 11-1) at 15-21.

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion ... that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the

opinion. <u>See</u> 20 C.F.R. § 404.1527(c).  The Second Circuit recently held that it does not require a "slavish recitation of each and every factor [provided in 20 C.F.R. § 404.1527(c)] where the ALJ's reasoning and adherence to the regulation are clear." <u>Atwater v. Astrue</u>, No 12-902-cv, 512 Fed. Appx. 67 (2d Cir. Feb. 21, 2013) (unpublished opinion).

Plaintiff's treating psychiatrist, Dr. Gupta at NCDMH, offered an assessment as to Plaintiff's RFC, which stated that Plaintiff has marked limitations in interacting with the public, supervisors, and co-workers, as well as marked limitations in responding appropriately to usual work situations and changes in the work setting. T. 375.

The ALJ did not give controlling weight to Dr. Gupta's opinion because it was inconsistent with both consultative psychiatric examinations, inconsistent with Plaintiff's activities of daily life, and inconsistent with Spectrum's assigned GAF score.[6] He also accorded greater weight to Dr. Ryan's opinion. T. 24.

Here, the ALJ acknowledged treatment notes indicating Plaintiff's anxiety and irritability throughout the record. Though his diagnosis of anti-personality disorder was corroborated by both Drs. Gupta and Ryan, the evidence in the record as a whole contains

---

[6] It should be noted that the GAF score assigned at NCDMH did not significantly depart from Spectrum's assessment, and fell within the same range of moderate symptoms.

is inconsistent Dr. Gupta's extreme functional limitation as discussed in further detail below.

Treatment notes from various sources consistently show that he Plaintiff was cooperative, related adequately, had clear speech and goal-directed thoughts with no evidence of hallucinations, delusions, or paranoia. T. 253, 296, 333, 426. At his hearing, Plaintiff testified that his psychiatric medication helped his panic attacks. T. 67.

Dr. Gbadmaosi, Plaintiff's primary treating physician, reported similar observations: that Plaintiff was fully alert, fully oriented, and his memory, insight, and judgment were in tact. T. 304, 333, 426. Dr. Gbadmaosi opined that Plaintiff had no limitations with regard to mental functioning. T. 451.

Plaintiff also reported that he spent time with his female companion daily and that he went out to movies and dinner with friends on occasion. T. 24, 81, 75, 375. Treatment notes indicate that Plaintiff had a network of close with whom he could speak at any time. T. 426. 435.

While consultative examiner Dr. Ryan opined that Plaintiff may have difficulty with stress and decision-making, he also stated that Plaintiff could generally relate with others, was cooperative, and was cable of performing low stress work. T. 18, 253-54. Dr. Ryan's findings are consistent with Plaintiff's GAF score of 60 as provided by Spectrum, which, as applicable to Plaintiff,

indicates some moderate symptoms, including occasional panic attacks, or moderate difficulty in occupational functioning such as conflicts with peers or co-workers. DSM at 34.

Dr. Butensky, who did not examine Plaintiff, reviewed the available medical evidence and concluded that Plaintiff had impairments that were not severe in the areas of affective, personality, and addiction disorders.[7] State agency psychological consultants are highly qualified experts in Social Security disability evaluation. 20 C.F.R. § 416.927(e)(2)(i). Thus, the opinions of consulting sources "may constitute substantial evidence if they are consistent with the record as a whole." Barringer v. Comm'r of Soc. Sec., 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996); SSR 96-6p). Such is the case here.

Thus, because Dr. Gupta's opinions conflicted with other opinions of record, including the consultative examiners and Plaintiff's other treating sources, Spectrum Health Services and Dr. Gbadmaosi, the ALJ did not err in denying controlling weight to Plaintiff's treating psychiatrist. See Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (internal citations removed).

---

[7] It is worth noting that Plaintiff's substance abuse has been in remission since completing rehabilitation in 1997 or 1999. T. 61-62, 399-400.

B.    **Vocational Evidence**

Plaintiff next contends that the ALJ erred in not relying on the hypothetical posed to the VE incorporating Dr. Gupta's stated marked limitations of interacting appropriately with the public, supervisors, and co-workers, and responding appropriately to usual work situations and routine work changes. Pl. Mem. 21-22.

In determining Plaintiff's RFC, the ALJ evaluated the entirety of the record, including both medical and non-medical evidence, and discounted Dr. Gupta's opinion insofar as it conflicted with other substantial evidence. In doing so, the ALJ also declined to include in his hypothetical question the symptoms and limitations that he had already rejected. See, e.g., Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983). The Commissioner may properly rely on the testimony of a VE in response to a hypothetical posed to him regarding the availability of the jobs so long as the hypothetical is based on substantial evidence, as the Court has previously determined. See id. At 1553-54; see Discussion, supra at IV.B.

Plaintiff also challenges the ALJ's third hypothetical posed to the VE, involving a "low contact" and "low stress" work environment. T. 94-95. Specifically, he claims that "such vague terms call into question the reliability of the vocational expert's response." Pl. Reply Mem. (Dkt. #16) at 6 (citing Disque v. Astrue, Civil No. 09-685-HA, 2010 WL 3732348 (D. Or. Sept. 20, 2010)). In response to the ALJ's hypothetical, the VE testified that Plaintiff

could perform work as a line packer or inspector/packer, and those jobs existed in significant numbers in the national economy. T. 95.

The fact that the ALJ resorted to the testimony of a VE is itself an acknowledgment that Plaintiff suffers from at least some nonexertional limitations. The ALJ credited the opinion of consultative examiner Dr. Ryan, who stated that Plaintiff may have difficulty dealing with stress, but that he could generally relate with others.  T. 22, 254. Based on this opinion, the ALJ framed his hypothetical, and this opinion, as stated earlier, is supported by substantial evidence in the record. The record overall is consistent with Plaintiff's impairments that cause stress and anxiety symptoms; it is also consistent with the fact that Plaintiff generally presents himself well, is alert, and could perform simple tasks and follow simple instructions.

Moreover, common usage dictates that "low contact" and "low stress" mean exactly that, and it does not appear from the transcript that there was any perceived ambiguity by the VE or Plaintiff's attorney, who did not cross-examine the VE on this point. T. 91-98.  See Campagna v. Barnhart, Civil No. 3:05 CV 517, 2007 WL 1020743, at *10 (D. Conn. Apr. 3, 2007) ("While plaintiff faults the ALJ for not 'defining' for the record what he meant by 'low stress' and 'supervised' these are terms that are used every day, and the vocational expert appears to have understood them.

Plaintiff's counsel also appears to have understood the terms, for he used them himself.")

While the Court does not question that Plaintiff has PTSD/anxiety, depression, and antisocial personality disorder as the ALJ found, and that he should continue his treatment and medications, the ALJ was justified in finding that the severity of his impairments was not sufficient to preclude substantial gainful activity.

For all of the above reasons, substantial evidence in the record supports the ALJ's determination that Plaintiff could perform other work, and was not disabled.

## C.  Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ's finding that his symptoms were "not credible to the extent that they [were] inconsistent with the above [RFC]," is insufficient to explain why Plaintiff's statements were rejected. Pl. Mem. 22-14.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability

exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see Social Security Ruling ("SSR") 96-7p, (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Secretary, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

It is true that "[i]f the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia, Valente v. Sec'y of HHS, 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted).

Here, though the ALJ used the frowned-upon boilerplate language that "implies that ability to work is determined first and is then used to determine the claimant's credibility," see Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012), he also set forth a detailed discussion of the evidence prior to reaching his conclusion that Plaintiff's statements about his activities do not support his allegations of a complete inability to work. Plaintiff reported that he walked for exercise, read, surfed the internet, watched television, drove, took care of his dog, played cards, and listened to the radio. T. 55, 206-09, 244, 254, 309, 400. He also stated that he went to the movies, went to dinner with friends, and shopped occasionally. T. 81, 209, 257. Although Plaintiff was capable of cooking his own meals, he testified that his female friend prepared his meals because he was "not really a good cook," and could also do dishes if he had to. T. 56-57, 207.  While Plaintiff stated that he missed a lot of appointments and did not like to grocery shop due to anxiety and panic attacks, the remainder of the evidence supports his ability to perform daily activities. Although one "need not be an invalid to be found disabled under Title XVI of the Social Security Act," Murdaugh v. Sec'y of HHS, 837 F.2d 99, 102 (2d Cir. 1988), much of the assistance Plaintiff received from his friend Patricia, such as cooking and cleaning, was not due to the fact that his mental illness prevented him from performing those chores himself. As

stated earlier, Patricia testified that she had a romantic interest in Plaintiff. T. 56-57, 81. It was therefore reasonable for the ALJ to conclude that Plaintiff could participate in a full range of daily activities despite his PTSD/anxiety.

The Court also rejects the argument that "in emphasizing [Plaintiff's] criminal history and prison record, ALJ Mazzarella appears to infer that [Plaintiff] is necessarily incredible." Pl. Mem. 24.

Plaintiff testified to PTSD/anxiety based on trauma from being shot during an unprosecuted drug buy and being raped and beaten while in prison. Aside from briefly discussing SSA's permanent exclusion of felony-related impairments and limited use of impairments arising in prison for Title II claims and determining that neither bar applied, the only other mention of Plaintiff's prison history was the ALJ's observation that "[t]he claimant's work record is generally poor and spotty and appears to have been affected by his criminal history and prison record. In any event, the work record does not raise any favorable inferences of an individual well motivated to work within his capabilities." T. 24. This statement is supported by Plaintiff's own hearing testimony, in which he told that ALJ that "[his] criminal background checks have kept [him] from getting jobs." T. 54. Here, the ALJ's decision does not suggest that he used Plaintiff's criminal record to undermine his credibility. To the contrary, the ALJ pointed out

that Plaintiff's work history was poor and "spotty" <u>regardless</u> of Plaintiff's prison record. T. 24. <u>See</u> <u>Schaal</u>, 134 F.3d at 502; 20 C.F.R. § 416.929(c)(3) (ALJ may consider a claimant's poor work history in evaluating his credibility).

Accordingly, the Court finds that the ALJ's credibility determination is proper as a matter of law, and is supported by substantial evidence.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. #11) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. #14) is granted. The Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          August 12, 2014